BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

IN RE CORRUGATED CONTAINER ANTITRUST )
LITIGATION )

DOCKET NO. 310

PATRICIA D. HOWARD
CLERK OF THE PANEL

OPINION AND ORDER

---

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD,
EDWIN A. ROBSON*, JOSEPH S. LORD, III*, STANLEY A. WEIGEL,
ANDREW A. CAFFREY, AND ROY W. HARPER*, JUDGES OF THE
PANEL

11/29/77

---

PER CURIAM

This litigation presently consists of 37 actions
pending in seven federal districts:  seventeen in the
Southern District of Texas; fourteen in the Northern
District of Illinois; two in the Southern District of
New York; and one each in the Northern District of
Texas, the Northern District of California, the Central
District of California and the District of Minnesota.

The complaints in these actions basically allege
that from as early as 1960 until 1975 the defendants and
various co-conspirators have engaged in a nationwide con-
spiracy to fix, raise, maintain and stabilize the prices
of corrugated containers in violation of Section 1 of the
Sherman Act.  With one exception, all the actions were
filed as purported class actions.  While there are some
variations in the descriptions of the classes sought,

---

*      Judges Robson, Lord and Harper took no part in the
decision of this matter.

all are national classes consisting of all, or some
group of, corrugated container purchasers.   The complaints
name a total of 38 defendants, including twenty defendants
that are named in all actions.

The complaints in this litigation generally describe
"corrugated containers" as follows:

> Corrugated containers are made from that
> category of paperboards referred to as corrugated
> board.   It is made from light weight paperboard
> suitable for corrugating, principally semi-chemical,
> kraft, straw, or mix paper stock.   Corrugated con-
> tainers are made in a variety of styles according
> to the needs of the customer.

In December 1975, a federal grand jury in the Southern
District of Texas began an antitrust investigation of the
corrugated container industry.   No indictments have been
returned, and the grand jury's investigation apparently
is continuing.

This litigation is before the Panel on the motion of
eighteen defendants, including fourteen of the defendants
common to all actions, for transfer pursuant to 28 U.S.C.
§1407 of the actions pending in districts other than the
Southern District of Texas to that district for coordinated
or consolidated pretrial proceedings with the actions
pending there.   All responding parties agree on or
recognize the propriety of transfer.   The only dispute among

the parties concerns the transferee forum.[1]   Besides the
Southern District of Texas, for all practical purposes, only
the Northern District of Illinois has been suggested as an
appropriate transferee forum.[2]

We find that these actions involve common questions
of fact and that their transfer under Section 1407 to the
Southern District of Texas will best serve the convenience
of the parties and witnesses and promote the just and
efficient conduct of the litigation.

Fourteen of the 38 defendants in MDL-310 are also
defendants in In re Folding Carton Antitrust Litigation,
MDL-250, which is presently pending in the Northern
District of Illinois.  See In re Folding Carton Antitrust
Litigation, 415 F. Supp. 384 (J.P.M.L. 1976).  The complaints
in that litigation basically describe "folding cartons" as:

---

[1]   Two defendants urge the Panel to defer selection of a
transferee forum because pretrial proceedings in the actions
in this litigation are in a relatively embryonic stage and
the grand jury investigation in Houston of the corrugated
container industry has not yet been concluded.  We see no
reason to grant this request.  Transfer at this time will
maximize judicial efficiency and best accomplish the other
purposes of Section 1407.
[2]   Plaintiff in one of the New York actions favors
the Southern District of New York as its first choice for
the transferee forum.  In the alternative, that plaintiff
favors the Southern District of Texas.  That plaintiff
has presented no arguments in support of the Southern
District of New York, however, and we find that the New
York forum would not be an appropriate transferee district
for this litigation.  Plaintiff in the other New York
action originally favored the Southern District of New York
as the transferee forum, but at oral argument that plaintiff
stated that it now favors the Southern District of Texas.
Transcript at 46-47.
   Five defendants state that they are presently unable
to urge selection of a particular district as the transferee
forum.

> Containers made principally from that category
> of paperboards referred to as bending box board.  It
> is made from virgin and reworked cellulose fibers.
> The chief characteristic of bending board is its
> ability to be bent or folded without breaking or
> serious damage at the crease lines which form the
> limits of the sides or ends of the carton.

The similarity between the actions in MDL-310 **and** the

actions in MDL-250 is a subject of considerable dispute

among some of the parties in MDL-310.

The parties favoring transfer to the Northern District

of Illinois argue that MDL-310 and MDL-250 may be

closely related, at least in part because mill produced

paperboard allegedly is the basic ingredient for both

corrugated containers and folding cartons.  These parties also

assert that discovery to date in MDL-250 demonstrates that

costs, prices and production of corrugated containers and

folding cartons are somewhat related, and that there are

common sales and production personnel in both segments of

the paperboard industry.  Moreover, these parties point

out, document depositories in MDL-250 have been established

in Chicago and substantial discovery has been completed in

that litigation.  Access to the hundreds of thousands of

documents presently on file in the folding carton document

depositories, many of which relate to economic, accounting

and marketing data of the fourteen defendants common to

both MDL-310 and MDL-250, clearly will be of substantial value to all plaintiffs who have filed corrugated container actions, these parties maintain. Thus, these parties assert that transfer of MDL-310 to the Northern District of Illinois will best permit coordination between MDL-250 and MDL-310 and best allow plaintiffs to ascertain the extent of conspiratorial activity in the paperboard industry.

In addition, these parties argue that the Northern District of Illinois is the most appropriate transferee forum for MDL-310 because: (1) The headquarters of the Fibre Box Association, the trade association for the corrugated container industry and, according to some of the complaints in this litigation, a central clearinghouse for information used by the defendants and co-conspirators to effectuate the alleged conspiracy, is located in Chicago; (2) Twenty-three of the 38 defendants in MDL-310 have their principal places of business, where relevant witnesses and documents presumably will be found, in Illinois or the upper Midwest; (3) Many plaintiffs' attorneys in this litigation, including attorneys for the plaintiffs in all seventeen Southern District of Texas actions, already are involved in MDL-250 and could most efficiently make a single trip to Chicago in connection with pretrial proceedings in both litigations; and (4) the Panel has often acknowledged

- 6 -

that Chicago's central location commends transfer to the
Northern District of Illinois when a litigation is nation-
wide in scope.

These parties discount the importance of the pendency
of the grand jury investigation in Houston.  They stress
that no indictment has yet been handed down and that the
Panel has not always considered the pendency of related
Government proceedings in a particular district to be the
determinative factor in selecting a transferee forum.

Although either the Southern District of Texas or
the Northern District of Illinois could be described as
an appropriate transferee forum for MDL-310, on balance we
conclude that the Southern District of Texas is preferable.
The moving defendants have represented to the Panel that
approximately 1.5 million documents have been produced to
the grand jury in Houston and that over 100 witnesses have been
called to testify before that grand jury.  Transcript at
24.  Regardless of whether any indictments are handed down
by the Houston grand jury, plaintiffs in the actions in MDL-310
in all likelihood will seek to discover the grand jury
materials.  Since these materials are under the custody and
control of the Southern District of Texas, transfer to that

forum will best facilitate any necessary coordination
between the Government proceedings and the private actions.
See In re Hawaiian Hotel Room Rate Antitrust Litigation,
_____ F. Supp. ___, _____ (J.P.M.L., filed September 27,
1977) (slip opinion at 4); In re Antracite Coal Anti-
trust Litigation, 436 F. Supp. 402, 403 (J.P.M.L.
1977);  In re Folding Carton Antitrust Litigation,
supra, 415 F. Supp. at 386.  Moreover, seventeen
of the 37 actions before us already are pending in the
Southern District of Texas, see In re Investors Funding
Corporation of New York Securities Litigation, _____ F. Supp.
____, _____ (J.P.M.L., filed August 8, 1977) (slip opinion
at 10), and a majority of the responding parties favor
transfer to that district, see In re Westinghouse Electric
Corp. Uranium Contracts Litigation, 405 F. Supp. 316, 319
(J.P.M.L. 1975).

The record before us leaves unclear the extent of
commonality between MDL-250 and MDL-310.  But even viewing
the record in the light most favorable to the advocates of
transfer to the Northern District of Illinois, we still
find that the just and efficient conduct of MDL-310 can
best be furthered by its transfer to the Southern District
of Texas.  We are confident that if any need arises to
coordinate pretrial proceedings in MDL-250 and MDL-310,

- 8 -

communication and cooperation among the judges supervising
these litigations, coupled with the cooperation of all
parties and their counsel, will be sufficient to prevent
any duplicative discovery, eliminate the possibility of
conflicting pretrial rulings, and thereby result in an
overall streamlining of pretrial proceedings in both
litigations.   See In re Sugar Industry Antitrust Litigation,
427 F. Supp. 1018, 1026-27 (J.P.M.L. 1977).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407,
the actions listed on the following Schedule A and pending
in districts other than the Southern District of Texas be,
and the same hereby are, transferred to the Southern
District of Texas and, with the consent of that court,
assigned to the Honorable John V. Singleton, Jr., for
coordinated or consolidated pretrial proceedings with the
actions already pending in that district and listed on
Schedule A.

SCHEDULE A                                      DOCKET NO. 310

                                                Civil Action No.

SOUTHERN DISTRICT OF TEXAS

Adams Extract Co. v. Alton Box Board            77-H-461
Co., et al.

Pepsi-Cola Bottling Co. of Washington,          77-H-584
D. C., Inc., et al. v. Weyerhaeuser Co.,
et al.

Williams Manufacturing Co. and Seneca           77-H-789
Industries, Inc. v. Alton Box Board Co.,
et al.

West Publishing Co. v. Alton Box Board          77-H-791
Co., et al.

Valley Plastics, Inc. v. Alton Box              77-H-792
Board Co., et al.

Levee Furniture Co. v. Alton Box                77-H-793
Board Co., et al.

Duranne of California, Inc. d/b/a               77-H-724
Embassy Giftwares v. Alton Box Board,
et al.

Austine Products Co. v. Alton Box Board         77-H-782
Co., et al.

Arcadia Furniture Corp. v. Alton Box Board      77-H-790
Co., et al.

Red Wing Industries, Inc. v. Alton Box          77-H-804
Board Co., et al.

Winona Industries, Inc. v. Alton Box Board      77-H-814
Co., et al.

Pepco Industries, Inc. v. Alton Box Board       77-H-813
Co., et al.

After Six, Inc., Bert Paley, Ltd. and           77-H-805
Commonwealth Toy & Novelty Co, Inc. v.
Alton Box Board Co., et al.

Grist Mill Co., v. Alton Box Board Co.,         77-H-849
et al.

SCHEDULE A (continued)                          DOCKET NO. 310

                                                Civil Action No.

## SOUTHERN DISTRICT OF TEXAS (cont.)

Valley Avocado Sales, Inc. v. Alton            77-H-869
Box Board Co., et al.

Universal Cooperatives, Inc. v. Alton          77-H-885
Box Board Co., et al.

Shell-Tex Fisheries, Ltd. v. Alton Box         77-H-876
Board Co., et al.


## NORTHERN DISTRICT OF ILLINOIS

Douglas Furniture Corp. v. Container           77-C-799
Corp. of America, et al.

Wittek Golf Supply Co., Inc. v. Alton          77-C-976
Box Board, et al.

Amberley Greeting Card Co., et al. v.          77-C-1106
Alton Box Board, et al.

Westbrae Natural Foods, Inc. v. Alton          77-C-1107
Box Board, et al.

Coordinated Industries, Inc. v. Alton          77-C-1108
Box Board, et al.

Furniture Plastics, Inc. v. Alton Box          77-C-1149
Board, et al.

Carron Manufacturing Co. v. Williamette        77-C-1063
Inc., et al.

Carnavale Bag Co., Inc. v. Alton Box           77-C-1198
Board, et al.

Durawood Industries, Inc. v. Alton Box         77-C-1521
Board Co., et al.

Sambo's Restaurants, Inc. v. Alton Box         77-C-1611
Board Co., et al.

Bodines, Inc. v. Alton Box Board Co.,          77-C-1965
et al.

Snyder-Craft, Co., Inc. v. Alton Box           77-C-1905
Board Co., et al.

Veneer Distributors, Inc. v. Alton Box         77-C-2435
Board Co., et al.

SCHEDULE A (continued)                          DOCKET NO. 310

                                                Civil Action No.

NORTHERN DISTRICT OF ILLINOIS (cont.)

Salsburg Meats, Inc. v. Alton Box Board         77-C-2433
Co., et al.


SOUTHERN DISTRICT OF NEW YORK

Covington Fabrics Corp. v. Alton Box            77 Civ 2881
Board Co., et al.

The Beaumont Co. v. Alton Box Board Co.,        77 Civ 2926
et al.


NORTHERN DISTRICT OF CALIFORNIA

Andre-Boudin Bakeries, Inc. v. Alton Box        C77-1283-WTS
Board Co., et al.


CENTRAL DISTRICT OF CALIFORNIA

Westside Paper Co. v. Alton Box Board           CV77-2523-WMB
Co., et al.


DISTRICT OF MINNESOTA

Artcraft Press, Inc. v. Alton Box Board         4-77-Civ-195
Co., et al.


NORTHERN DISTRICT OF TEXAS

United Farmers Cooperative, Inc., et al.        CA-2-77-73
v. International Paper Co., et al.

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE CORRUGATED CONTAINER ANTITRUST )   DOCKET NO. 310
LITIGATION                            )

JP 310
3/22/78

Franklin Container Corp., et al. v. International
Paper Co., et al., E. D. Pennsylvania, C.A. No. 77-3204

OPINION AND ORDER

—————

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD,
EDWIN A. ROBSON, JOSEPH S. LORD, III*, STANLEY A. WEIGEL,
ANDREW A. CAFFREY*, AND ROY W. HARPER*, JUDGES OF THE PANEL.

—————

PER CURIAM

The Panel, pursuant to 28 U.S.C. §1407, previously

transferred several actions in this litigation to the

Southern District of Texas and, with the consent of that

court, assigned them to the Honorable John V. Singleton, Jr.,

for coordinated or consolidated pretrial proceedings with

the actions pending there.  In re Corrugated Container Anti-

trust Litigation, 441 F. Supp. 921 (J.P.M.L. 1977).  In so

doing, the Panel described the actions in this litigation as

follows:

> The complaints in these actions basically allege
> that from as early as 1960 until 1975 the defendants
> and various co-conspirators have engaged in a nation-
> wide conspiracy to fix, raise, maintain and stabilize
> the prices of corrugated containers in violation of

—————

*/ Judges Lord, Caffrey and Harper took no part in the
decision of this matter.

     Section 1 of the Sherman Act.  With one exception, all the actions were filed as purported class actions. While there are some variations in the descriptions of the classes sought, all are national classes consisting of all, or some group of, corrugated container purchasers. The complaints name a total of 38 defendants, including twenty defendants that are named in all actions.

Id. at 922.

     The complaint in the above-captioned action (Franklin) is brought as a purported class action on behalf of all independent corrugated box manufacturers[1] located in the United States that, during the period from January 1970 until late 1977, purchased Kraft liner board[2] manufactured by one or more of the defendants and that sold corrugated boxes in competition with one or more of the defendants.

     Plaintiffs in Franklin name as defendants fourteen companies.  Each of these fourteen defendants is also a defendant in Corrugated Container; ten of them are defendants in all the actions in Corrugated Container.

_____

[1]/ The term "independent corrugated box manufacturer" is defined in the Franklin complaint as a "company which owns or controls one or more corrugated box plants and which is not a manufacturer of Kraft liner board."

[2]/ Kraft liner board is a raw material used in the manufacture of corrugated containers.  Kraft liner board is defined in the Franklin complaint as a "type of paper possessing superior characteristics of bursting and tensile strength and resistance to adverse weather conditions which make it suitable for the manufacture of corrugated board."  Corrugated board allegedly consists of two or more sheets of Kraft liner board that have been cemented to a corrugating medium.

-3-

The complaint in <u>Franklin</u> alleges that the defendants,
commencing in or about 1945 and continuing until
late 1977, conspired to monopolize the manufacture,
distribution, sale and shipment of corrugated boxes in the
United States in violation of Section 2 of the Sherman Act.
The complaint further alleges that defendants conspired
to restrain trade unreasonably in the manufacture, distribution,
sale and shipment of Kraft liner board and corrugated boxes
in violation of Section 1 of the Sherman Act. This conspira-
torial activity allegedly included, <u>inter alia</u>, the following
acts: (1) Acquiring the ownership of independent corrugated
box manufacturers and/or constructing corrugated box plants,
thus becoming the competitors of the independent manufacturers
while remaining the principal source of supply of Kraft
liner board for the independent manufacturers; (2) Increasing the
prices of Kraft liner board sold to independent manufacturers,
while at the same time selling or transferring Kraft liner
board to defendants' own corrugated box manufacturing plants
at prices significantly lower than the prices charged to
plaintiffs; (3) Fixing the prices of corrugated boxes at
artificially low levels; (4) Participating in certain reci-
procal arrangements with co-defendants, including the exchange
of Kraft liner board throughout the United States without
regard to differences in cost of production and without
charge for freight, handling or other necessary costs; and

(5) Furnishing certain trade publications with incomplete and misleading statistics relating to the production, prices and inventory of Kraft liner board and corrugated boxes in order to distort certain statistics disseminated by those publications, thus enabling defendants to fix the prices charged for Kraft liner board which was sold to the independent manufacturers. The complaint in Franklin charges that defendants' conduct has enabled them to increase their share of the market in the manufacture, distribution and sale of corrugated boxes in the United States to approximately 80 percent.

Because Franklin appeared to share questions of fact with the actions previously transferred to the Southern District of Texas, the Panel issued an order conditionally transferring Franklin to that district for inclusion in the Section 1407 proceedings pending there. The named plaintiffs in Franklin, nine defendants in that action and Plaintiffs' Steering Committee in Corrugated Container have moved the Panel to vacate the conditional transfer order. Four defendants in Franklin, as well as a Corrugated Container defendant that is a member of the purported plaintiffs' class in Franklin, support transfer of Franklin to the Southern District of Texas.

We find that Franklin shares questions of fact with the actions previously transferred to the Southern District of Texas and that transfer of Franklin to that district under

Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

The parties that oppose Section 1407 transfer of Franklin argue that Franklin and the actions in Corrugated Container involve different economic and conspiratorial issues. These parties point out that the complaints in the actions in Corrugated Container allege a general nationwide conspiracy to fix the price of corrugated containers at artificially high levels. In contrast, these parties assert, the complaint in Franklin alleges that defendants in that action fixed the price at which they sell corrugated boxes at artificially low levels in comparison to the price that could feasibly be charged by independent manufacturers. These parties further maintain that the alleged price fixing involved in Franklin occurred in limited geographic areas and for limited periods, and was merely one aspect of the predatory course of conduct allegedly carried out by defendants against selectively targeted independents in order to further defendants' conspiracy to monopolize trade in corrugated boxes. These parties thus argue that Franklin is basically a Sherman Act Section 2 monopolization case and that the bulk of the discovery necessary in Franklin will be significantly different than that involved in Corrugated Container.

Opponents to transfer also assert that because some companies are both defendants in Corrugated Container and members of the purported class in Franklin, those companies will have interests antagonistic to the interests of the other plaintiffs and defendants in Corrugated Container, and therefore Franklin and Corrugated Container can most fairly and efficiently be conducted by leaving them separate.

Opponents to transfer point out that the pendency in Houston of a grand jury investigation into possible antitrust violations in the corrugated container industry was an important factor in the Panel's decision to transfer the actions in Corrugated Container to the Southern District of Texas. 3/   The Government proceedings pending in Houston, however, are not relevant to the subject matter involved in Franklin, these parties maintain.  To the extent that the pendency of Government proceedings is relevant, these parties argue, a federal grand jury currently sitting in Philadelphia is investigating, inter alia, possible antitrust violations concerning Kraft liner board.  These parties assert that information concerning market structure, conduct, performance and other economic data and analyses concerning the Kraft liner

---

3/  In late January 1978, the Houston grand jury indicted fourteen paper manufacturers and 26 of their present or former officers and employees for allegedly fixing the price of corrugated containers and sheets sold east of the Rocky Mountains for the past eighteen years.   Nine corporations and nine individuals were  charged with felony  antitrust violations, and the remaining five corporations and seventeen individuals were charged with misdemeanor antitrust violations.  These criminal proceedings have been assigned to Judge Singleton.

board industry and the manufacturing of corrugated boxes
would much more likely emanate from the Philadelphia
grand jury investigation than from the Houston proceedings.

Therefore, opponents to transfer conclude that transfer
of Franklin to the Southern District of Texas would merely
introduce broad new issues and pretrial problems into the
Section 1407 proceedings pending there without any
commensurate benefit to the parties in those proceedings
or in Franklin.  Should there be any need to coordinate
discovery or other pretrial proceedings in Franklin and
the actions in Corrugated Container, these parties maintain
that the district courts handling these actions could and
would effectively provide for such coordination.

We find these arguments unpersuasive.  While we
recognize that Franklin and the actions in the transferee
district involve some disparate factual issues and legal
theories, the record before us amply demonstrates that Franklin
and the actions in Corrugated Container share numerous significant
questions of fact concerning whether there was price fixing
in the corrugated container industry, and if so, when, where,
how, by whom and was it at artificially high or low levels.
We are convinced that the parties in Franklin and Corrugated
Container will have to depose many of the same witnesses,
examine many of the same documents, and make many similar
pretrial motions in order eventually to prove -- or disprove --
both sets of conspiracy allegations.  Thus, as we stated in

In re Beef Industry Antitrust Litigation, 432 F. Supp. 211,
213 (J.P.M.L. 1977), which involved issues very similar to
those now before us, transfer of Franklin

> is necessary in order to prevent duplicative discovery,
> eliminate any possibility of conflicting pretrial rulings
> and conserve time and effort for the parties, the
> witnesses and the judiciary.  Any antagonistic interests
> among the parties in the various actions may be accommo-
> dated by the transferee judge in designing the pretrial
> program.  See [In re Sugar Industry Antitrust Litigation,
> 437 F. Supp. 1204, 1206-08 (J.P.M.L. 1977);] In re Delta
> Airlines Crash at Boston Massachusetts, 395 F. Supp. 1405,
> 1407  (J.P.M.L. 1975); In re Franklin National Bank
> Securities Litigation, 393 F. Supp. 1093, 1095 (J.P.M.L.
> 1975).  And discovery on any issues unique to [Franklin]
> may be scheduled by the transferee judge to proceed in
> a separate discovery schedule concurrently with discovery
> on common issues.  See In re Republic National-Realty
> Equities Securities Litigation, 382 F. Supp. 1403, 1405-06
> (J.P.M.L. 1974).

We agree with the parties that argue that documents
relevant to Franklin may be gathered by the federal grand
jury in the Eastern District of Pennsylvania, which is investi-
gating possible antitrust violations in the manufacture,
distribution and sale of paper and paper products.  See In re
Fine Paper Antitrust Litigation, _____ F. Supp._____, _____
(J.P.M.L.,filed **March 3,** 1978) **(slip opinion at 2, 5-6).**
Under the particular circumstances of the matter now before
us, however, where over 1.5 million documents directly related
to the corrugated container industry were produced to the
Houston grand jury,[4/]  and where each of the defendants in

_____

4/  In re Corrugated Container Antitrust Litigation, supra,
441 F. Supp. at 924.

Franklin is already involved as a defendant in Corrugated
Container, inclusion of Franklin in Corrugated Container will
clearly promote the just and efficient resolution of both
Franklin and the actions already in the transferee district.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C.
§1407, the action captioned Franklin Container Corp., et al.
v. International Paper Co., et al., E.D. Pennsylvania,
C. A. No. 77-3204, be, and the same hereby is, transferred
to the Southern District of Texas and, with the consent of
that court, assigned to the Honorable John V. Singleton, Jr.,
for coordinated or consolidated pretrial proceedings with
the actions already pending there in MDL-310.